## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: | Chapter 7 |
| HH TECHNOLOGY CORP., | Case No. 22-10156-JEB |
| Alleged Debtor. | |

## MEMORANDUM OF DECISION

This matter came before the Court on the involuntary petition ("Involuntary Petition") filed on February 11, 2022 ("Petition Date"), against the alleged debtor, HH Technology Corp. ("HHT") by PCC Rokita S.A. ("PCC Rokita") as the sole petitioning creditor. Shanghai Morimatsu Chemical Equipment Co., LTD ("Shanghai Morimatsu") joined the involuntary petition as a petitioning creditor on May 23, 2022. (Collectively, PCC Rokita and Shanghai Morimatsu will be referred to as the "Petitioning Creditors").

On April 4, 2022, Craig R. Jalbert, as Assignee for the Benefit of Creditors of HHT, ("Assignee") filed a motion to dismiss ("Motion") the Involuntary Petition, together with an Affidavit of Craig R. Jalbert, setting forth 15 creditors of HHT. HHT filed a joinder ("Joinder") to the Motion. Pursuant to the Motion and Joinder, HHT and the Assignee asserted that since HHT had 11 or more creditors, PCC Rokita, as a single petitioning creditor could not commence the Involuntary Petition.

For the reasons set forth in this Memorandum, the Court will grant the Motion, as joined by HHT, and dismiss the Involuntary Petition by separate order. As more fully set forth below, the Court finds that HHT had more than 11 eligible creditors under Section 303(b)(2) on the Petition Date, requiring that three petitioning creditors must have filed or timely joined in the Involuntary Petition.

**Background**

HHT was a specialty engineering company involved in projects around the world.
Richard Malone and Urs Geser founded HHT in 2004 and remained the owners of HHT. The
company had an office in Beverly, Massachusetts ("Beverly Office") and an office near
The Woodlands, Texas ("Woodlands Office").

Mr. Malone worked from the Beverly Office and handled administrative matters,
including the payment of bills. Although HHT had accounting software, it was not used to
maintain accounts payable. Mr. Malone managed the bills and payments manually, keeping track
of what invoices were due and paying by check. Creditors were directed to send invoices to the
Beverly Office. Typically, Mr. Malone would have 12 to 15 bills to pay on a monthly basis,
including bills for utilities, landlords, and company credit cards.

Mr. Geser worked in the Woodlands Office, where many of the engineers also worked.
Mr. Geser frequently traveled to oversee the company's projects around the world, including in
China and Europe. Because of his involvement in the ongoing projects, Mr. Geser sometimes
received bills from vendors related to the projects. Mr. Geser would forward vendor bills to Mr.
Malone for payment.

HHT began experiencing financial difficulties in 2020, when the COVID-19 pandemic
began. The shutdowns due to the pandemic affected many of HHT's projects. In addition, Mr.
Geser and other employees were unable to travel overseas to work on projects. As a result, HHT
experienced a decline in revenue.

HHT also was involved in litigation with PCC Rokita both in Poland and in the United
States District Court for the District of Massachusetts during this period. PCC Rokita had
obtained a default judgment in a Polish court in 2010. In 2018, PCC Rokita commenced

litigation in the District Court to enforce the judgment. The District Court stayed the litigation

while HHT pursued remedies in the Polish courts to set aside the judgment. In July 2021, HHT

lost its final efforts in the Polish courts to set aside the Polish judgment. On July 26, 2021, the

District Court entered an order lifting the stay and allowing the litigation to proceed. The District

Court held a hearing in November 2021 on the issue of whether the Polish judgment was

enforceable. On December 13, 2021, the District Court entered an order allowing PCC Rokita's

motion for judgment on the pleadings in part. The District Court found that that PCC Rokita had

a valid enforceable judgment of at least $1,016,500 but denied the motion as to the remaining

portion of the Polish judgment without prejudice. The District Court set a deadline for the parties

to submit further responses on the remaining issues.

On December 31, 2021, HHT executed a Trust Agreement and Assignment for the

Benefit of Creditors ("Assignment") which the Assignee accepted. Pursuant to the Assignment,

HHT transferred its assets to the Assignee, and agreed to cooperate with the Assignee in the

winddown of its business and collection of assets. The Assignee agreed to undertake actions on

behalf of the creditors who assented to the Assignment, including to collect the assets and make

pro rata distributions. In connection with the Assignment, Mr. Malone sent the Assignee a list of

creditors as of December 31, 2021, which contained 10 creditors. The Assignee subsequently

began the process of collecting the assets and notifying creditors.

On February 11, 2022, PCC Rokita filed the Involuntary Petition as the sole petitioning

creditor. On April 4, 2022, the Assignee and HHT filed the Motion and Joinder. The Court held a

status conference on April 21, 2022, at which the Court set a deadline for any response by PCC

Rokita to the Motion and Joinder. In addition, by separate order, the Court set May 23, 2022, as

the deadline for creditors to join the Involuntary Petition. Shanghai Morimatsu joined the petition

on May 23, 2022.

The Court held a hearing on the Motion and Joinder on May 26, 2022. The Court set an evidentiary hearing for July 27, 2022, and issued a pretrial order requiring an expedited discovery schedule, with discovery to conclude by July 7, 2022.

In the Motion and Joinder, the Assignee and HHT also argued that it was in the best interests of creditors to permit the Assignment to continue instead of a bankruptcy. The Court set a deadline for the Assignee and HHT to file a motion to abstain under Section 305. On June 29, 2022, after a hearing, the Court denied the request to abstain.

On Saturday, July 16, 2022, DFT Properties, LLC ("DFT") filed a motion to join the Involuntary Petition, despite having received notice of the May 23, 2022, deadline to join. On July 18, 2022, the Court denied the motion by DFT. The Bankruptcy Appellate Panel subsequently dismissed the appeal of the order as interlocutory.

The Court held a final pretrial conference on July 20, 2022. The Court also held a hearing on the motion of the Petitioning Creditors filed on July 15, 2022, to exclude evidence of four creditors. The Petitioning Creditors asserted that the four creditors should be excluded from any determination of eligible creditors under Section 303(b)(2), since the invoices were not produced until July 5, 2022. After reviewing the motion and opposition, the Court denied the motion finding that (i) the Petitioning Creditors had an opportunity to conduct discovery on the creditors in depositions scheduled for July 6, 2022, and July 7, 2022, (ii) the Petitioning Creditors waited ten days after the invoices were produced to raise the issue, and (iii) the Petitioning Creditors had not sought an extension of discovery, or a discovery conference prior to the conclusion of discovery. The Court ordered that notice be given to the four creditors and set August 22, 2022, as the deadline for the four additional creditors to join the Involuntary Petition. None of the

additional creditors moved to join the Involuntary Petition.

The Court held a two-day evidentiary hearing on the Motion and Joinder on July 27, 2022, and August 31, 2022.

## Analysis

Under the Code, creditors may commence an involuntary bankruptcy against a corporation or individual under Chapter 7 or Chapter 11 if they meet certain requirements. An involuntary bankruptcy is an "extreme remedy" that can create significant disruption for an alleged debtor. *In re Brooklyn Res. Recovery, Inc.*, 216 B.R. 470, 486 (Bankr. E.D.N.Y. 1997). It is intended to benefit the entire creditor body, not simply serve as another collection tool for an individual creditor. *In re Tichy Elec. Co. Inc.*, 332 B.R. 364, 376-77 (Bankr. N.D. Iowa 2005).

To balance the risk to the alleged debtor and the rights of creditors, the Code sets specific parameters regarding which creditors can bring an involuntary case and how many creditors are required. For most cases, Section 303 requires that three qualified creditors are required to join in an involuntary petition. 11 U.S.C. §303(b)(1). To qualify, the creditors must hold claims that are not contingent or the subject of a bona fide dispute, which are in a minimum aggregate amount in excess of the value of any liens held by the creditors. *Id.* For this case, which was commenced prior to April 1, 2022, the petitioning creditors must hold claims that aggregate at least $16,750 in excess of the value of any liens held by the creditors.

Where the alleged debtor has few creditors, there is an exception to the requirement for three petitioning creditors. A single petitioning creditor is permitted to commence an involuntary bankruptcy if the alleged debtor has less than 12 eligible creditors. 11 U.S.C. §303(b)(2). Section 303(b)(2) is specific as to which creditors are excluded from the calculation of eligible creditors. The eligible creditors must meet the requirements to file a petition under Section 303(b)(1),

holding claims that are not contingent or the subject of a bona fide dispute. *Id.* Employees, insiders, and transferees of transfers that are voidable under the strong-arm powers of the Code are excluded from the count of eligible creditors. *Id.*

If an involuntary petition is filed by only one creditor, an alleged debtor may contest the petition on the basis that there are 12 or more eligible creditors. If contesting the number of eligible creditors, the alleged debtor must file a list of the creditors with their addresses, the nature of their claims, and the amounts of their claims. Fed. R. Bankr. P. 1003(b). Once an alleged debtor asserts that it has more than 11 eligible creditors, the burden shifts to the petitioning creditors. *In re Reyes-Colon*, 922 F.3d 13, 19-21 (1st Cir. 2019). As a result, the petitioning creditors bear the burden of proof to show the ineligibility of any listed creditors and to demonstrate that there are fewer than 12 eligible creditors. *Id.*

The Court finds that the Petitioning Creditors failed to meet their burden of proof to show that there were fewer than 12 eligible creditors. As more fully discussed below, the Court finds that HHT had 15 creditors who were eligible under Section 303(b)(2) of the Code. Before addressing the specific objections to individual creditors, the Court will address the objections raised by the Petitioning Creditors that are common to several creditors.

**Creditors Appearing on Subsequent Lists**

After filing the initial list of creditors, HHT and the Assignee identified additional creditors and filed amended lists. The Court finds that HHT and the Assignee met their burden by providing the initial list of creditors, rejecting the argument of the Petitioning Creditors that any additional creditors should not be considered.

The Assignee and HHT provided evidence that creditors were added to the list as additional information came to light. Craig R. Jalbert, the Assignee, testified regarding his

6

extensive experience serving as an assignee or a liquidating trustee. Mr. Jalbert testified credibly

that it was common to find that additional creditors were identified after the initial review. He

testified that he made changes to the list of creditors as he learned additional information from

reviewing documents, including the mail, and obtaining additional information.

Mr. Malone and Mr. Geser also testified as to the business practices of HHT, the reasons

changes were made to the lists, and why creditors were identified late. Mr. Malone testified that

he was responsible for administrative matters including paying the bills. He testified that he used

a manual system, not computer software, to identify accounts payable. In doing so, he relied on

bills that were received at the Beverly Office, or bills forwarded by Mr. Geser. Both Mr. Malone

and Mr. Geser testified that Mr. Geser was involved with the projects and would sometimes

receive project-related invoices. Both testified that he did not handle day-to-day administrative

matters.

Mr. Malone and Mr. Geser both testified credibly to the stress of dealing with the

company's declining financial situation and the forced winddown of a company they established

and ran for 17 years. Mr. Malone testified that he took on the many tasks required by the

winddown, including working with Mr. Jalbert and providing him information and records. Mr.

Geser testified that after the company closed in December 2021, he was focused on his own

personal situation, not the business.

The Petitioning Creditors challenged the credibility of Mr. Malone and Mr. Geser,

alleging that they face potential personal liability for claims by a bankruptcy trustee. But the

Court finds that any potential bias was not sufficient to taint their testimony. The testimony by

Mr. Malone and Mr. Geser was consistent with Mr. Jalbert's testimony and experience; it was

also consistent with the roles each played in HHT. Based on the Court's experience, the late

identification of invoices or creditors is also consistent with the disruptions that arise when a closely held business faces financial difficulty.

### Small and Recurring Debts

Contrary to the Petitioning Creditors' assertion, creditors are not excluded from the calculation of eligible creditors under Section 303(b)(2) if they hold claims that are small in amount or represent recurring charges. The Code identifies the creditors to be counted under Section 303(b)(2), expressly excluding employees, insiders, and the transferees of voidable transfers. The Code does not exclude creditors for the amount of their claims, as long as the aggregate minimum amount for all petitioning creditors has been met. *In re Rassi*, 701 F.2d 627, 632 & n.9 (7th Cir. 1983). The inclusion of creditors with small claims or recurring charges is consistent with the consideration of such creditors under the Bankruptcy Act, the predecessor statute to the Code. Under the Bankruptcy Act, courts held that creditors with small or recurring claims were to be included in the calculation of eligible creditors. *In re Okamoto*, 491 F.2d 496, 498 (9th Cir. 1974). Despite making other changes to the requirements for involuntary petitions, Congress did not exclude creditors with small or recurring claims when it enacted the Bankruptcy Code.

The position of the Petitioning Creditors is also inconsistent with the policy considerations for involuntary petitions. As discussed above, the requirement of three petitioning creditors and other restrictions are intended to avoid a single creditor from using an involuntary petition as a collection tool. Excluding legitimate creditors because of the dollar amount or frequency of their charges, would only increase the ability of a single creditor to abuse the system.

### Section 547 Defenses Must Be Considered

The burden is on the Petitioning Creditors to show that creditors were ineligible because they were transferees of voidable transfers, after having taken into account any applicable defenses. To meet their burden, the Petitioning Creditors were required to provide evidence that the elements necessary to avoid a transfer under the applicable statute have been meet. In considering whether a transfer is avoidable as a preference, the defenses under Section 547 must also be considered. *Williams v. Roos*, No. 6:19-CV-01674, 2021 WL 234498, at *3 (W.D. La. Jan. 22, 2021).

Contrary to the Petitioning Creditors' assertion, the Assignee and HHT were not required to plead defenses to alleged transfers as affirmative defenses in the Motion or in the pretrial memorandum. The Assignee and HHT in the Motion and Joinder raised the defense that there were more than 11 eligible creditors, shifting the burden to the Petitioning Creditors to prove otherwise. The Petitioning Creditors cannot shift that burden back by requiring the Assignee and HHT to plead and prove potential defenses to alleged transfers.

Requiring the consideration of defenses under Section 547(c) is also consistent with Section 547. In 2019, Congress amended Section 547(b) to expressly require that a transfer could be avoided only "based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses." 11 U.S.C. §547(b). If a trustee must consider such defenses before even seeking avoidance, similarly, the Court should not lightly eliminate creditors from consideration under Section 303(b)(2) unless it has considered any known or reasonably knowable defenses to the alleged transfers.[1]

---

[1] Because the Court concluded that other defenses could be applicable to the alleged voidable transfers, the Court did not reach the issue of whether Section 547(c)(9) applies in this involuntary case.

### Ordinary Course Defense

The Petitioning Creditors argue that the ordinary course defense under Section 547(c)(2) cannot be used with respect to transfers in the fall of 2021 because HHT had ceased operations and was winding down. But the evidence fails to demonstrate that HHT ceased operations in the fall of 2021. In addition, the cases and the policies underlying Section 547 fail to support the argument that the ordinary course defense is unavailable if a business is winding down.

When considering the evidence as a whole, it does not show that HHT had ceased operations in the fall of 2021, as the Petitioning Creditors assert. To the contrary, the evidence reflects that HHT continued to employ personnel, and continued to work on projects through December 31, 2021. The Petitioning Creditors appear to focus on November 2021, when the District Court held the hearing to determine whether the Polish judgment was enforceable. They consider that point to be a bright line for the cessation of the business, relying, at least in part, on Mr. Jalbert's testimony. But Mr. Jalbert indicated uncertainty in his recollection of the timeline. The evidence provided through the testimony of Mr. Malone and Mr. Geser, and the records of payments and receipts of the business, does not show that operations had then ceased. Nor does the docket or orders of the District Court suggest that the hearing was determinative. The District Court did not enter the order on PCC Rokita's motion until December 13, 2021. In addition, the District Court granted PCC Rokita's motion only in part and set a deadline for the parties to provide further responses on the remaining issues. No judgment was entered at that time. Although the litigation did result in the decision by HHT to enter into the Assignment, the evidence does not support a finding that HHT ceased operations prior to December 31, 2021. In addition, HHT continued to take actions consistent with winding down its affairs through at least January 2022.

The position of the Petitioning Creditors is also inconsistent with the purposes and policies behind the ordinary course defense. The defense is intended to permit creditors to continue to do business with a debtor in the normal course even when the debtor may have financial difficulty.  Without the defense, "creditors would be reluctant to conduct business with a struggling enterprise for fear that any payments made by the debtor could later be avoided." *O'Neill v. Nestle Libbys P.R., Inc.*, 729 F.2d 35, 37 (1st Cir. 1984). As long as the transactions are consistent with prior practice, or practice in the industry, creditors are generally permitted to continue to deal with a business that may be struggling financially or winding down, without the risk of those transactions being undone. To conclude otherwise would undermine the purposes of the defense.

### Debts Subject to Bona Fide Disputes

The Petitioning Creditors bear the burden of proof to show that creditors are not eligible because their claims are subject to bona fide disputes. To do so under Section 303, the opponent must do more than deny liability. *In re Dilley,* 339 B.R. 1, 6 (B.A.P. 1st Cir. 2006). It must show that there are "substantial factual or legal questions" regarding the amount or liability. *Id.* The Petitioning Creditors must do more than merely speculate that a claim is disputed, they must provide evidence of substantial factual or legal disputes. They have failed to do so.

The Petitioning Creditors assert that certain claims are subject to a bona fide dispute since, among other reasons, they arose after the execution of the Assignment. But the execution of the Assignment did not release HHT from any liabilities, including liabilities under current contracts or for ongoing services. Nor did it unilaterally result in a termination of any contract. Although the Assignee agreed to pay for certain expenses incurred after the Assignment, HHT was not released from its direct obligations to creditors under leases or service contracts. Such

claims are neither contingent nor subject to a bona fide dispute solely because they arose after the date of the Assignment.

**The Eligible Creditors**

The Court finds that HHT had 15 eligible creditors under Section 303(b)(2) as of the Petition Date:

**1.      PCC Rokita**

PCC Rokita was an eligible creditor of HHT as of the Petition Date as stipulated by the parties.

**2.      Shanghai Morimatsu**

Shanghai Morimatsu was an eligible creditor of HHT as of the Petition Date as stipulated by the parties.

**3.      iCorps Technologies, Inc.**

iCorps Technologies, Inc was an eligible creditor of HHT as of the Petition Date as stipulated by the parties.

**4.      Comcast**

Comcast Corporation, also known as Comcast Business, ("Comcast") was an eligible creditor of HHT as of the Petition Date, with a claim of at least $1,427.33. Comcast provided internet services to the Beverly Office and the Woodlands Office. Comcast was listed twice on the creditor list, once for each of the separate locations. In their posttrial brief, the Assignee and HHT waived the argument that there were two separate creditors.

The Court finds that the lists submitted by the Assignee and HHT were sufficient to include Comcast as a creditor. Although Comcast Corporation was listed with a service name of Comcast or Comcast Business, the list included the amount due, the billing addresses and the

nature of the claim. The information was sufficient to provide Comcast notice of the

proceedings. It also was sufficient to provide the Petitioning Creditors with information to

contact the creditor, as demonstrated by the documents submitted in evidence that resulted from

a subpoena on Comcast. The Petitioning Creditors cite no support for their suggestion that an

alleged debtor must include the exact corporate name for a creditor to be considered.

The Petitioning Creditors also contend that Comcast received voidable preferential

transfers from HHT in late 2021, but they have failed to meet their burden of proof. Based on the

evidence, avoidability of the payments that HHT made to Comcast in November 2021 and

December 2021 would be subject to the ordinary course defense. Mr. Malone testified credibly

regarding his practice of paying bills on a regular basis. The evidence showed that Comcast

received payments on a regular monthly basis. The payments made to Comcast in November and

December were consistent with this practice.

In addition, Comcast could assert contemporaneous exchange for new value and new

value as defenses to the avoidability of the November and December payments. As reflected on

the invoices, Comcast billed for its services in advance. The payments made in November and

December were in advance of or contemporaneous with services through January 3, 2022. The

invoices show that Comcast continued to provide services through December 2021 for the

Woodlands Office and through January 2022 for the Beverly Office. As discussed above, the

evidence demonstrated that HHT continued to conduct business at the offices and employ

personnel through December 2021. In addition, Mr. Malone testified that he continued to work

with the Assignee at the Beverly Office through January 2022. HHT remained liable for such

expenses and the use of the services despite the Assignment.

### 5.    Fusion Connect

Fusion Connect was an eligible creditor of HHT as of the Petition Date with a claim of at least $464.63. Fusion provided internet telephone service for HHT. Mr. Malone testified that HHT ceased using the services in August 2021. As of the Petition Date, the amount due to Fusion included (i) $23.50 for leased equipment as evidenced by an invoice dated January 2, 2022, and (ii) $441.13 for prior services as reflected in an invoice dated November 1, 2021.

The Petitioning Creditors failed to meet their burden of proof to show that Fusion Connect was not owed any sums by HHT as of the Petition Date. Although HHT ceased using the service in August or September 2021, there was no evidence that HHT returned any leased equipment, terminated the contract, or made a payment.

The Petitioning Creditors failed to provide evidence that Fusion had released HHT of its debt. At the evidentiary hearing, Birch Blair, Vice President and Deputy General Counsel of Fusion, testified that Fusion had made an accounting entry to charge off the account as a bad debt expense. But Mr. Blair did not testify that Fusion had released HHT of any liability, or that the equipment had been returned. "[C]harging off a debt does not diminish the legal right of the original creditor to collect the full amount of the debt." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1297 (11th Cir. 2016).

### 6.    Voizzo VoIP

Voizzo VoIP was an eligible creditor of HHT as of the Petition Date with a claim of at least $86.56. Voizzo provided HHT with internet telephone services after HHT ceased using the services of Fusion.

The Petitioning Creditors failed to meet their burden of proof to show that Voizzo was not an eligible creditor. As reflected above, although HHT entered into the Assignment, that did

not terminate any agreements for services or release HHT from any ongoing liability. The

Petitioning Creditors failed to show that HHT had terminated the service with Voizzo.

The Petitioning Creditors also failed to meet their burden of proof to show that Voizzo

was the recipient of a voidable preference because of a payment in January 2022. Based on the

Voizzo invoices, the Petitioning Creditors argue that it can be inferred that a payment was made

in January 2022 because the February 2022 invoice did not include any past balance due for the

January 2022 invoice. But the Petitioning Creditors did not provide any evidence of a payment.

More importantly, they failed to show that any such payment was a transfer of property of HHT.

Section 547(b) only permits the avoidance of transfers of an interest in a debtor's property as a

preference. 11 U.S.C. §547(b). Since no transfer of HHT's property was shown, the Petitioning

Creditors failed to meet their burden.

### 7.    National Grid

National Grid was an eligible creditor of HHT as of the Petition Date with a claim of at

least $173.37. National Grid provided electrical services to the Beverly Office.

The Petitioning Creditors failed to meet their burden to show that National Grid was not

an eligible creditor. Although the Petitioning Creditors assert that the payments made to National

Grid in November and December 2021 were preferential, they failed to meet their burden to

show that the payments were subject to avoidance, after considering any known or reasonably

knowable defenses. Based on the evidence, National Grid would be able to assert the defenses of

ordinary course and new value. The evidence showed that National Grid received payments on a

regular monthly basis and the payments in November and December were consistent with this

practice. In addition, National Grid would be able to raise the defense of new value for such

transfers. As reflected on its invoices, National Grid provided new value in the form of electric

service in December 2021, January 2022, and February 2022 for the Beverly Office which remained unpaid. HHT was using the Beverly Office through at least January 2022. As discussed above, HHT was not released from its liability for ongoing service as a result of the Assignment. The Petitioning Creditors failed to provide evidence that the services were terminated.

### 8.    Ambit Energy

Ambit Energy was an eligible creditor of HHT as of the Petition Date with a claim of at least $1,489.09. Ambit provided electrical services to the Woodlands Office.

The Petitioning Creditors failed to meet their burden to show that Ambit was not an eligible creditor. The Petitioning Creditors assert that Ambit was the recipient of a voidable preference based on a payment made by HHT in December 2021. But HHT and the Assignee provided evidence that the payment is not voidable since Ambit could raise the defense of ordinary course. The evidence, including Mr. Malone's testimony and the records of HHT, showed that Ambit received payments on a regular monthly basis and the payment in December was consistent with this practice.

### 9.    Bank of America

Bank of America was an eligible creditor of HHT as of the Petition Date with a claim of at least $10.61. Bank of America provided a credit card, which HHT used for office expenses, including certain recurring charges for licensed software. The charges as of the Petition Date were for a licensed software product that HHT used. The Petitioning Creditors failed to show that the license had been terminated or that HHT was not liable for the charge.

The Petitioning Creditors failed to meet their burden of proof to show that Bank of America was the recipient of voidable transfers. The Petitioning Creditors assert that certain payments made in November 2021 and December 2021 were preferential. But the evidence

showed that Bank of America would be able to assert defenses to avoidability, including the

ordinary course defense as well as the new value defense. Mr. Malone and the records indicated

that he regularly made payments. In addition, the invoices of Bank of America showed additional

charges after the payments were made. The additional charges were consistent with the type of

charges that HHT had previously incurred. Mr. Malone. testified that HHT used the credit card to

pay software licensing fees. He also testified that HHT used the credit card to charge for certain

business expenses through Amazon. The Petitioning Creditors suggest that the new charges

could not have been for the benefit of HHT after it ceased operating but provided no evidence.

The Petitioning Creditors also failed to show that the software licenses had been terminated.

### 10.   Inventa

Inventa is an eligible creditor of HHT as of the Petition Date with a claim of at least

$25,000. HHT entered into a contract with Inventa to perform services in connection with HHT's

contract with a customer, Rashid, that was building a chemical plant. HHT's contract with

Inventa provided for installment payments, with a final payment of at least $25,000. Inventa

issued an invoice dated July 2021 for the final $25,000 payment. Mr. Malone and Mr. Geser

testified credibly regarding the services to be provided by Inventa, the project, and HHT's late

production of the invoice and contract.

The Petitioning Creditors failed to meet their burden of proof that the claim of Inventa

was subject to a bona fide dispute or contingent. The Petitioning Creditors speculate that the debt

was either disputed or contingent for several reasons. They argue that the invoice was not due or

contingent and the July 2021 date was fabricated, given its production late in discovery. They

argue that, since HHT had sufficient funds in July 2021, HHT would have paid the invoice then

if it had been due. They also claimed that, given Mr. Geser's other business relationships with

the principal of Inventa, Inventa would have sent the invoice in July 2021 if it had been due then, and HHT would have paid it.

But the Petitioning Creditors must do more than speculate about the debt, they must demonstrate a substantial factual or legal dispute. The Petitioning Creditors did not provide any evidence showing that the project was not completed or that the sums were not due. In contrast, the evidence provided by the Assignee and HHT established that the debt was due. Mr. Malone testified credibly that international invoices sometimes were mislaid and not processed. He also testified credibly that during the summer of 2021 HHT was facing significant financial pressure and was unable to pay all creditors. Mr. Geser also testified credibly regarding the project, the contract, and the discussions regarding payment. He also testified credibly that after the closure in December 2021, he did not focus on the creditors or the list, as he was focused on the need to deal with his own personal matters. This was also consistent with the division of labor between the two owners, since Mr. Malone remained responsible for administrative and financial matters and Mr. Geser focused on projects. Finally, the invoice is consistent with the prior invoices and the records of HHT, which showed that five progress payments totaling $225,000 of $250,000 were previously billed and paid.

## 11.    S-Log

S-Log is an eligible creditor of HHT as of the Petition Date with a claim of at least $200. S-Log provided transportation services for HHT. Mr. Malone and Mr. Geser testified credibly regarding the obligation to S-Log, the amount due, and the reason the invoice was produced late in discovery.

The Petitioning Creditors failed to meet their burden of proof to show that the amount due to S-Log was subject to a bona fide dispute or contingent. Their speculation that, because it

was produced late in discovery, the invoice was fabricated or had been paid months before the

Petition Date is insufficient to raise a substantial factual or legal issue.

### 12.      Nanjing Huaxing Pressure Vessel Manufacture Co., Ltd

Nanjing Huaxing Pressure Vessel Manufacture Co., Ltd ("Nanjing") is an eligible

creditor of HHT as of the Petition Date with a claim of at least $350. Nanjing provided

inspection services in connection with a project for HHT's customer Neville. The debt to

Nanjing was evidenced by an invoice dated in January 2022. Mr. Malone and Mr. Geser testified

credibly about the obligations to Nanjing, the amount due, and the reason for the late production

of the invoice.

The Petitioning Creditors failed to meet their burden of proof to show that the amount

due to Nanjing was subject to a bona fide dispute or contingent. The Petitioning Creditors were

required to do more than speculate that no debt was owed because the invoice was produced late

in discovery. They failed to provide any evidence of a substantial factual or legal dispute

regarding the amount or liability to Nanjing.

### 13.      Krzysztof Klementowski

Krzysztof Klementowski is an eligible creditor of HHT as of the Petition Date with a

claim of at least $200. Mr. Klementowski was a Polish private investigator hired to locate the

former president of PCC Rokita for HHT. HHT thought that the former president might provide

information to assist in settling or resolving the dispute with PCC Rokita. Mr. Geser testified

credibly regarding the engagement of Mr. Klementowski, the reasons the invoice had not been

submitted to Mr. Malone previously, and the reason the invoice was produced late in discovery.

The Petitioning Creditors failed to meet their burden of proof to show that the amounts

due to Mr. Klementowski were subject to a bona fide dispute or contingent. Their speculation

that the invoice was fabricated or paid by HHT's Polish counsel is insufficient to raise

substantial factual or legal disputes as to HHT's liability or the amount due to Mr.

Klementowski.

### 14.    Cummings Properties, LLC

Cummings Properties, LLC is an eligible creditor of HHT as of the Petition Date with a

claim of at least $68,875. Prior to the filing of the petition, in August 2005, Cummings and HHT

entered into a lease for the Beverly Office. Under the lease, HHT was required to make monthly

payments in advance for rent, in addition to quarterly payments for other charges. The lease ran

through April 2023.

The Petitioning Creditors failed to meet their burden of proof to show that Cummings

was not an eligible creditor. The Petitioning Creditors assert that Cummings was the recipient of

a voidable preference for payments made in November 2021 and December 2021. The payments

were for quarterly charges, December rent and January rent. The evidence demonstrates that

Cummings would be able to assert ordinary course defenses to the avoidability of those transfers.

Mr. Malone testified credibly that he made payments to Cummings on a regular basis for the rent

in advance, and for the quarterly payments when received. His testimony was consistent with the

exhibits, which reflected monthly checks in advance for the rent, as well as quarterly payments

for the other charges.

In addition, Cummings also would be able to assert a defense that the payments for

November and December rent were a contemporaneous exchange for new value. A tenant under

an unexpired lease receives new value for a monthly rental payment since the tenant is entitled to

continue to occupy the space for the month. *In re PMC Mktg. Corp.*, 518 B.R. 150, 158 (B.A.P.

1st Cir. 2014). As explained by another bankruptcy court:

> The rationale is that an unexpired lease on real property is treated as an executory contract under section 365 of the Code, and therefore as each month comes up under the lease the lessee becomes obligated anew for that individual month's rent. *Armstrong v. General Growth Development Corp. (In re Clothes, Inc.)*, 35 B.R. 489, 491 (Bankr. N.D. 1983). In return, the lessor becomes obligated to provide the lessee with the leasehold for that month. *Id.* Therefore, the payment of current rent is premised upon current consideration and is therefore an exchange of "new value" between the parties. *Id. See also Carmack v. Zell (In re Mindy's Inc.)*, 17 B.R. 177, 178–79 (Bankr. S.D. Ohio 1982).

*In re Gen. Time Corp.*, 328 B.R. 243, 247 (Bankr. N.D. Ga. 2005).

HHT made the November payment for the December rent and the December payment for the January rent. Mr. Malone testified credibly that HHT required the continued use of the space in January to facilitate the transfer of books and records and assets to the Assignee. The Assignee did not assume the lease or the obligations under the lease. The Assignee had no right to occupy the Beverly Office, and HHT remained liable for the use.

The Petitioning Creditors failed to provide evidence that the termination of the lease by Cummings on February 12, 2022, was a voidable transfer. Cummings sent a notice of default on February 2, 2022. The notice did not terminate the lease or transfer any rights under the lease. Instead, it gave notice that HHT must cure the outstanding arrearages within ten days, by February 12, 2022, and if not, the lease would automatically terminate. Contrary to the Petitioning Creditors' argument, since there was no termination prior to the Petition Date, there was no voidable fraudulent transfer.

The Petitioning Creditors also failed to sustain their burden of proof that Cummings was the recipient of a voidable postpetition transfer under Section 549. Under Section 303(b)(2), creditors who receive a postpetition transfer that is voidable under Section 549 of the Code are not eligible. But before such voidability can be considered, the transfer must have been valid. Upon the filing of a petition, the automatic stay imposed under Section 362 arises. A transfer in

violation of the automatic stay, even by a creditor who does not have notice of the stay, is void

ab initio, not merely voidable. *In re Soares*, 107 F.3d 969, 976-77 (1st Cir. 1997). If a transfer is

void under Section 362, then it cannot be avoided under Section 549. *40235 Washington St.*

*Corp. v. Lusardi*, 329 F.3d 1076, 1081 (9th Cir. 2003). As a consequence, a creditor who acted to

seize property of a debtor in violation of the stay is not the recipient of a voidable transfer under

Section 549.

   This distinction also resolves what appears to be an inconsistency in the Code. The

qualifications of a creditor to file a petition, as well as the number of eligible creditors under

Section 303(b), is determined as of the date of the petition. *In re Atwood*, 124 B.R. 402, 406

(S.D. Ga. 1991). Although the Court is required to make the determination as of the petition date,

Section 303(b) appears to be inconsistent, since it excludes creditors who receive a transfer after

the petition date that are voidable under Section 549. As of the petition date, since no

postpetition transfer could have yet occurred, a creditor could not be subject to a challenge under

Section 549. But without such an exclusion an alleged debtor could make payments to certain

creditors, while still claiming they are included in the calculation of eligible creditors. While that

may be an appropriate policy decision for voluntary transfers, the same rationale does not apply

to transfers by a creditor in violation of the stay. Such transfers are not in the control of the

alleged debtor. But since such actions are void in violation of the stay, there can be no voidable

transfer under Section 549, and the creditor may still be included in the calculation of eligible

creditors.

   With respect to Cummings, no postpetition transfer occurred that was voidable under

Section 549. Since the lease was not terminated by the notice, as of the Petition Date, the lease

was property of the estate. 11 U.S.C. §541. Consequently, the purported "automatic termination"

of the lease was stayed under Section 362 and any actions to terminate the lease or possess the property were void. Since there was no termination of the lease, there was no transfer to be avoided under Section 549. In the alternative, any actions by Cummings to terminate the lease were void in violation of the stay and there was no transfer under Section 549.

15.     **DFT Properties, LLC**

DFT Properties, LLC is an eligible creditor of HHT as of the Petition Date with a claim of least $179,779. Prior to the filing of the petition, DFT and HHT entered into a lease for the Woodlands Office. The Petitioning Creditors, HHT and the Assignee stipulated that DFT qualified to be a petitioning creditor as of the Petition Date with a claim of at least $179,779. They disagree on whether DFT was not eligible under Section 303(b)(2) because it received a voidable transfer.

The Petitioning Creditors have failed to meet their burden of proof that DFT was not an eligible creditor. After the Petition Date, DFT foreclosed on certain personal property of HHT at the Woodlands Office pursuant to a security interest under the lease. The Petitioning Creditors argue that DFT is excluded as an eligible creditor under Section 303(b)(2) because they received a voidable transfer under Section 549. However, as discussed above, since the actions by DFT were in violation of the stay, any transfer of the property of HHT after the Petition Date was void. Since the transfer was void, the transfer was not subject to avoidance under Section 549 of the Code. Consequently, the Petitioning Creditors failed to meet their burden to show that DFT received a voidable transfer.

**The Excluded Creditors**

In determining the eligible creditors, the Court has excluded certain creditors. The parties stipulated that First Insurance Funding and T-Mobile were not eligible creditors. In their posttrial

brief, HHT and the Assignee did not argue that Eastern Bank and Chase Bank were eligible creditors. As a result, they have waived the argument that Eastern Bank and Chase Bank were eligible creditors under Section 303(b)(2).

## Conclusion

For the foregoing reasons, the Court finds that HHT had more than 11 eligible creditors under Section 303(b)(2) as of the Petition Date. To commence an involuntary proceeding, three qualifying creditors must have timely joined in the Involuntary Petition. Since there are only two Petitioning Creditors, the Court finds that the requirements of Section 303(b) have not been met, and the Involuntary Petition will be dismissed by separate order. The Court will retain jurisdiction for the purposes of determining any claims under Section 303(i).

Dated: March 31, 2023

_____
Janet E. Bostwick
United States Bankruptcy Judge